**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **TEREENA MARKS,** ) | Case No.  1:10 CV 1293 |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| **OHIO BELL TELEPHONE CO,** ) | |
| ) | |
| **Defendant.** ) | |

Before the Court is Defendant's Motion for Summary Judgment (**Doc #: 22**).  For the reasons stated *infra*, Defendant's Motion is hereby **GRANTED**.

### I.  BACKGROUND

**A.  Marks' Employment and Company Background**

Plaintiff Tereena Marks worked as a customer service representative ("CSR") at Defendant the Ohio Bell Telephone Company's ("Ohio Bell's") Consumer Call Center ("CCC") in Cleveland, Ohio, from May 8, 2000, to May 7, 2009 (Doc #: 22-2 ("Marks Dep.") at 34-35). During her employment, Marks was a member of the Communications Workers of America Union, and the terms and conditions of her employment were governed by a collective bargaining agreement ("CBA") between the union and Ohio Bell. (Id. at 35.)

Marks directly reported to two different Sales Coach Managers, who themselves reported to Center Sales Managers Freeze McCarter and James Tench.  (Doc #: 22-12 ("Willis Decl.") ¶ 3).  McCarter and Tench both reported to General Manager Scott Willis from August 2007 to the present.  (Id.)  Willis was in charge of making termination decisions, including the decision

to terminate Marks.  (Doc #: 22-5 ("Willis Dep.") at 30.)  The CCC also had an Attendance Manager and Force Manager.  Kimberly Miceli, the Attendance Manager, ensured compliance with the attendance policy and assisted CSR's in applying for Family and Medical Leave Act ("FMLA") leave.  (Doc #: 22-6 ("Miceli Dep.") at 5-6.)  Dan MacDonald, the Force Manager, ensured there were enough CSR's to efficiently handle the call volume in the CCC.  (Id.)

Ohio Bell provides CSR's various types of excused absences which do not count against employees under the company's attendance policy. (Doc #: 22-13 ("Miceli Decl.") ¶ 3.) Excused absences include FMLA leave (Id.).  Additionally, Ohio Bell allows employees to take time off of work to attend a court proceeding if they either make up the time under the company's flex time-policy[1] or the time is excused under the company's CBA. (Id. ¶ 4).

The CCC also employs a cell phone policy prohibiting CSR's from talking on their cell phones if they are supposed to be on-line taking calls.   (Miceli Dep. at 95-98).  However, they are allowed to talk on their cell phone if they are on break, lunch, or approved to be off-line, as long as they are not on the sales floor.  (Id.)

**B.  Marks' FMLA Leave**

Marks had taken leave under FMLA every year since 2002. (Marks Dep. at 314).  She had been certified for FMLA leave at different times for different reasons, including anxiety, panic attacks, and gastritis problems from gastric bypass surgery.  (Id. at 130-33).

On May 13, 2008, Marks notified her manager, Shaun Smith that she would not be able to work her shift – from 9:30 a.m. to 6:30 p.m., the following day because she would be in court

---

[1]Ohio Bell's flex-time policy allows excused time for up to two hours to accommodate employees' personal obligations. (Miceli Dep. Ex. 1)

-2-

in the morning and had a doctor's appointment in the afternoon. (Id. at 87, 104, 126.)  On May 14, Marks attended the court conference from 10:00 a.m. to 11:00 a.m., then went home because she did not feel well before attending her doctor's appointment from 4:00 pm to 5:00 pm. (Id. at 99, 104, 126).  Ohio Bell gave Marks two hours of appointment time for her court appearance and four hours of FMLA time for her doctor's appointment, leaving her with two hours of unexcused time.  (Smith Decl. ¶ 3).  When Marks inquired as to why she had unexcused time, Smith offered to allow her to make up the hours under flex-time, which she declined, instead requesting to have the hours excused under FMLA.  (Id.)  Smith checked with Labor Relations Manager Rick Plant, who stated that coding an absence as FMLA time for a non-qualifying reason would be fraudulent.  (Id ¶ 4; Doc #: 22-7 ("Plant Dep.") at 46-47.)  Smith never submitted the hours for FMLA coverage.

Marks attempted to contest Ohio Bell's denial of her FMLA leave.  Marks contacted the Department of Labor and was told that it was against the law for the company to deny her FMLA rights, but they were too backed up to assist her at the moment, and she should seek an attorney.  (Marks Dep. at 140).  Marks also filed a grievance with the union but no action was taken.  (Id. at 142).

In May 2008, Marks was certified for intermittent FMLA leave by psychiatrist Diane Wetzig for anxiety and panic attacks. (Id. at 130.)  She was permitted to take time off for various reasons, including doctors' appointments if certified by the doctor.  (Id. at 136.)  The last date she took FMLA leave was April 7, 2009.  (Id.)

Marks' FMLA time was questioned by Miceli in 2009.  (Miceli Dep. at 32-37.)  Marks was sent notice that leave taken under FMLA between February and March 2009 had been

-3-

initially denied. (Miceli Decl. Ex. 5.) Initial denials require the physician to substantiate the employee's time away from work. (Miceli Dep. at 43.) Wetzig faxed to Ohio Bell certification that Marks suffered from a serious health condition and approved her for forty hours a week intermittent leave. (Wetzig Dep., Ex. H.) Ohio Bell also had an internal medical examiner, Dr. Khuri verify that Marks' leave was legitimate. Khuri responded that Marks was certified for the questioned FMLA leave for four hours per week, not forty hours, but that he had no reason to doubt the certification. (Miceli Dep., Ex. 24.)

After Miceli received Wetzig and Khuri's verification, she asked Willis for assistance in getting Marks' case "escalated." (Miceli Dep. at 32-33). Miceli sent an email to Willis and Tench expressing "concern" that Marks' absences were unexcused and that she may go on disability leave to avoid termination. (Miceli Dep., Ex. 25). Ohio Bell again asked Khuri for verification. He responded that Marks was to be certified for four to six days a month, along with four additional times a month for treatment, and reiterated that there was no reason to doubt the certification. (Miceli Dep. Ex. 26).

### C. Marks' Alleged Violations of Company Policy

#### 1. Marks' Cell Phone Use

On April 15, 2009, Marks was observed by Miceli talking on her cell phone. (Miceli Dep. at 94). Ohio Bell claimed that this was a violation of the aforementioned company cell phone policy because Marks was to be on-line taking calls and was not given permission by the manager to take a cell phone break. (Doc #: 22-10 ("Gleason Dep.") at 36, 38-39). Marks was disciplined for suspected fraud or illegal conduct for misusing company time and was given both a final written warning and one-day suspension. (Marks Dep. 202-203; Miceli Decl. ¶ 6; Miceli

-4-

Dep. at 94). Other employees had previously been disciplined or terminated for violations of the cell phone policy. (Miceli Decl. ¶ 6).

Marks asserts that she did not misuse company time because she was on an approved break and was using her cell phone in an approved location. According to Marks, she received approval from the supervisor to log out at 2:45 p.m. (Marks Dep. at 176). She was logged out by the supervisor under the exception code, "employee development" until 2:52 pm but did not specifically recall what she did during the seven minutes. (Id. at 176-177; Marks Dep. Ex. 11). Supervisors used "employment development" when approving employees to go off-line for personal health reasons, including bathroom breaks. (Gleason Dep. at 32-33). Marks states that she was talking on her cell phone on her way back to her seat in the elevator bank, a cell phone approved area, (Marks Dep. at 191), and that nothing in Ohio Bell's cell phone policy restricts the use of cell phones to regularly scheduled breaks as opposed to other breaks. (Plaintiff's Brief at 5; Miceli Decl. Ex. 2).

### 2. Marks' Absence on April 22, 2009

On April 22, 2009, Marks was scheduled to work from 9:30 a.m. to 6:30 p.m. (Doc #: 22-15 ("Smith Decl.") ¶ 2.) Marks had a court conference to attend that morning for a civil lawsuit she had filed. (Marks Dep. 229-30). Marks notified MacDonald of her need for time off. (Id. at 228-32). The conference ended at approximately 10:20 a.m., but Marks did not report to work for the remainder of the day. (Id. at 304-05). To account for her absence, Marks submitted a note from the court the following day stating that she attended a pretrial conference beginning at 9:00 a.m. (Id. at 248). Miceli called the court to confirm the beginning and ending times and was told the conference ended at approximately 10:20 a.m. (Miceli Decl. ¶ 7). Because the

-5-

conference ended at 10:20 a.m., and Marks offered no other reason for her absence for the rest of her shift, Miceli reported this information to Human Resources. (Id. ¶ 8). Human Resources notified Ohio Bell's Asset Protection Department, the department in charge of investigating employees' suspected violations of Ohio Bell's Code of Business Conduct ("Code of Business Conduct" or "COBC"), and Ron Williams was assigned to investigate the matter (Doc #: 22-8 ("Williams Dep.") at 6).

Williams' investigation included interviews of MacDonald and Marks. MacDonald provided a written statement that: he gave Marks time off of work to attend a court conference; he advised her that she would need to return to work at the end of the conference; and he asked her to provide documentation from the court verifying that she attended the proceedings. (Id. at 8). During Marks' interview, she stated her conference ended at 3:30 pm, and after the conference she met with her attorney until 4:45 pm. (Id. at 43, 46). Williams prepared a written statement of Marks' interview which Marks did not sign, a common practice of union employees. (Id. at 41, 43). Williams also contacted the court, which confirmed that the conference ended by 10:20 a.m. (Id. at 58-59). Additionally, Marks' attorney, Dean Colovas, verified that the conference had ended by late morning. (Id. Ex. 4). Colovas stated that he conferred with Marks in the hallway of the courthouse for a short time afterward, but he did not see her for the remainder of the day. (Id.)

Williams submitted his report to Scott Willis who concluded Marks misused company time off, was dishonest in representing that she needed an entire day off, and was again dishonest when interviewed during Ohio Bell's investigation. (Id. at 18); (Willis Dep. at 30, 32-34, 131-32). Marks was suspended pending termination. (Marks Dep. at 288). On May 6, 2009,

Ohio Bell conducted a Union-Management Review Board Hearing to discuss the future of Marks' employment. (Marks Dep. at 290).  Tench and Plant attended on behalf of the company and two union representatives attended on behalf of Marks. ("Plant Dep." at 14-15; Marks Dep. at 251).  At the hearing, Marks admitted that she was only in court until 10:20 am.  (Plant Dep. at 11).  She stated that she had lunch from 1:00 pm to 2:00 pm, retrieved and proofread documents from her attorney's office from 3:30 p.m. - 3:45 p.m., and then got into her car and began to drive home at 4:45 p.m.  (Id.)  She stated that she did not return to work at any time during the remainder of the day because it would have taken her an hour and fifteen minutes to get there. (Id. at 12).  Because Marks altered her story, Plant recommended that Ohio Bell proceed with its termination of her. (Id. at 14).  Willis agreed and dismissed Marks effective May 7, 2009.

Also discussed at the hearing was Marks' misuse of company time for being on her cell phone on April 15.  (Plant Dep. at 38).   However, Willis stated that his decision to terminate Marks was based solely on her misrepresentation of how she spent the day of the court hearing. (Willis Dep. at 30-31).

**D. Marks' Complaint Against Ohio Bell**

Marks filed a complaint in the Cuyahoga County Court of Common Pleas on May 18, 2010, bringing the following causes of action: (1) Violation of the FMLA - Interference with the Exercise of Rights; (2) Violation of the FMLA - Retaliation; (3) Disability Discrimination; and (4) Failure to Provide Reasonable Accommodation.  Because the complaint asserted claims arising out of federal FMLA law, the case was removed to this Court on June 6, 2010.  Plaintiff filed an Amended Complaint on November 5, 2010 (Doc #: 12), stating the same claims and including a demand for a jury trial.

On May 16, 2011, Defendant filed the instant Motion requesting Summary Judgment on all of Plaintiff's claims. Plaintiff filed her brief in opposition to the Motion on June 27, 2011. (Doc #: 27.) Defendant filed its Reply Brief on July 15, 2011. (Doc #: 32.)

## II. LEGAL ANALYSIS

### A. The Summary Judgment Standard

Ohio Bell, pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), moves for summary judgment on each of Plaintiff's causes of action. The court may grant summary judgment on a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The party that bears the burden at trial must, after adequate time for discovery, offer enough evidence to establish the existence of every element in that party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party. *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir. 1993). If, after reviewing the record as a whole, a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue of material fact for determination at trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Count I: FMLA Interference

The Sixth Circuit recognizes two distinct theories of recovery under the FMLA statute: interference (also called entitlement) pursuant to 29 U.S.C. 2615(a)(1)[2] and retaliation (also

---

[2]"It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. 2615(a)(1) (West 1993).

called discrimination) pursuant to 29 U.S.C. 2615(a)(2).[3] *See Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004); *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006) (citation omitted)).

Marks claims that Ohio Bell interfered with her exercise of her rights under FMLA by denying her two hours of FMLA leave on May 14, 2008. For a successful claim for interference, the plaintiff has the burden of proving: (1) she is an eligible employee under the statute, (2) the defendant is an employer under the statute, (3) the employee was entitled to leave under FMLA, (4) the employee gave the employer notice of an intent to take leave, and (5) the employer denied the employee entitled FMLA benefits. *Calvin v. Honda of Am. Mfg, Inc.*, 346 F. 3d 714, 719 (6th Cir. 2003) (citation omitted). The only element in dispute is whether Marks was entitled to take FMLA leave.

Marks is unable to demonstrate that she was entitled to take FMLA leave for the two hours in question. While Dr. Wetzig pre-approved Marks to take intermittent leave for her chronic psychological condition on February 26, 2008, Marks must establish that the two hours of absence on May 22 were related to her psychological condition in order to be entitled to take the leave. Ohio Bell contends that it was not related because: (1) Marks requested leave only after being denied appointment time for the two hours; (2) Marks merely stated that she "didn't feel well" and did not attribute her sickness to her psychological condition; and (3) Dr. Wetzig's notes from later that day did not suggest that Marks was unable to work earlier in the day. Marks has not refuted Defendant's claims by presenting any evidence that she was entitled to FMLA leave. Summary judgment is therefore granted with respect to Count I.

---

[3]"It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. 2615(a)(2) (West 1993).

**C. Count II: FMLA Retaliation**

Marks also claims that she is entitled to recovery under the FMLA because Ohio Bell terminated her in retaliation for utilizing FMLA leave. FMLA retaliation can be proven by direct or circumstantial evidence. *Grubb v. YSK Corp.*, 401 F.App'x 104, 105 (6th Cir. 2010). Marks argues that both types of evidence support her retaliation claim.

**1. Direct Evidence**

Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). With direct evidence, the fact-finder need not draw any inferences to conclude that the employer's challenged actions were at least in part motivated by discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). Direct evidence "must establish not only that the plaintiff's employer was predisposed to discriminate...but also that the employer acted on the predisposition." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2003). "Evidence of discrimination is not considered direct evidence unless a[n improper] motivation is explicitly expressed." *Amini v. Oberlin Coll.*, 440 F.3d 350, 259 (6th Cir. 2006). Once the plaintiff has presented direct evidence of retaliation, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002).

Direct evidence of discrimination must come from a person with authority to make decisions regarding the plaintiff's employment. *Carter v. University of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003). However, discriminatory animus can be inferred upwards where the person

-10-

with the decision making authority bases his decision on assessments or reports by supervisors with a discriminatory animus.  *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1187 (2011).

Additionally, a company policy targeting individuals taking FMLA leave can be direct evidence of discrimination.  *Blount v. Ohio Bell Tel. Co.,* 2011 WL 867551 at 5 (N.D. Ohio March 20, 2001) (*citing Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).  Marks contends that direct evidence comes from the comments and actions of Miceli, her direct supervisor, and through Ohio Bell's policy of retaliating against employees who utilize FMLA leave.

Marks argues that comments made by Miceli to Willis regarding Marks' use of FMLA leave demonstrate a discriminatory animus.  (Plaintiff's Brief at 14).  After determining that an error had been made and Marks had been certified for 4 hours of FMLA time instead of 40, Miceli concluded that Marks had 74 hours of unexplained absence from January 1, 2009 through April 10, 2009.  The 74 hours had been initially denied as FMLA leave but Marks was given "time to get more medical in [order] to support the absences since she clearly has exceeded the 4 hour weekly frequency and duration."  Miceli requested that Tench and Willis help to get Marks' case "escalated" based upon Marks taking excessive leave  (Miceli Dep. at 32-33).  Miceli stated that "escalate" is a term used for requests for investigations of FMLA abuse.  (Id. at 33-34). Miceli's April 10, 2009 email to Willis also expressed "concern" that Marks would take disability leave before it was determined whether Marks' 74 hours of absence were medically approved, thus preventing Defendant from terminating her.

Marks asserts that she was then terminated following two subsequent events – alleged misuse of a cell phone and allegedly failing to return to work after her court hearing on April 22.

-11-

Marks argues that she did not violate company policy in using her cell phone during an approved break and that she did not return to work after the court hearing because she had been excused from work for the day, without pay.  Marks contends that a jury could therefore reasonably conclude that Miceli had a discriminatory animus which can be inferred upward because Willis used Miceli's reports both in deciding to investigate Marks' FMLA use and in deciding to terminate Marks.

Marks' arguments are rejected.  Marks has not presented direct evidence that Miceli discriminated against her for utilizing FMLA leave.  Miceli's desire to "escalate" Marks' case appears to arise from Miceli's honest belief that Marks was improperly taking FMLA leave.  While Marks was pre-approved to take intermittent FMLA leave, she was approved for 4 hours a week, not 40 hours a week.  Miceli believed that Marks had violated the company's attendance policy by taking leave which was not subject to the FMLA.  There is no basis to conclude that Miceli sought to take adverse action against Marks for utilizing protected FMLA leave.

Marks also argues that Ohio Bell's targeting of employees who took FMLA leave serves as direct evidence of retaliation.  Specifically, Marks points to the October 25, 2010 deposition of Anthony Woods in *Blount v. Ohio Bell Tel. Co.*, Case No. 1:10cv1439, in this district.  Woods, a former coach at the Ohio Bell customer call center in Cleveland who participated in management meetings with Tench, testified that Ohio Bell's supervisors labeled employees who took FMLA leave "potential abusers" and targeted them for greater discipline than employees who did not take FMLA leave.  (Doc #: 29-1 ("Woods Dep.") at 99-100; 107-108).   Relying on this same deposition, Judge Gwin of this court held that such a practice was direct evidence of discrimination.  *Blount v. Ohio Bell Tel. Co.,* 2011 WL 867551 at 5 (N.D. Ohio March 20, 2001).

-12-

However, Woods' testimony was based on comments made by Dionna Prentice, who left the Cleveland call center in September 2007, long before Marks' termination. (Woods Dep. at 19; 100; 102-103.) Woods' deposition testimony in Judge Gwin's case would not be admissible at trial because it has no nexus to Marks' termination and would likely be excluded under Rule 403 of the Federal Rules of Evidence as unfairly prejudicial or misleading. Marks therefore is unable to directly demonstrate that Ohio Bell retaliated against her for taking FMLA leave.

Consequently, Ohio Bell is not required to demonstrate by a preponderance of the evidence that it would have terminated Marks, notwithstanding her utilization of FMLA leave.

**2. Circumstantial Evidence**

Retaliation claims based upon circumstantial evidence are subject to the *McDonnell-Douglas* "tripartite burden-shifting framework." *Gembus v. MetroHealth Sys.*, 290 F.App'x 842, 844 (6th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff has the initial burden to prove: (1) that she exercised her rights under FMLA, (2) that she was adversely affected by a decision of her employer, and (3) there was a causal connection between her exercising her FMLA right and the adverse employment decision. *Id* at 844-45 (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F. 3d 309, 314 (6th Cir. 2001). If the plaintiff meets her burden, the burden shifts to the defendant to show "a legitimate, non-discriminatory reason for...discharge." *Skrjanc* 272 F.3d at 314 (citing *McDonnell Douglas Corp.,* 411 U.S. 792). If defendant presents a legitimate reason, the burden then shifts back to plaintiff to prove defendant's proffered reason was merely "pretextual and that unlawful discrimination was the real reason for the adverse action." *Gibson v. City of Louisville,* 336 F.3d 511, 513 (6th Cir. 2003).

-13-

The only element of Marks' initial burden in dispute is whether there is a causal connection between the exercise of Marks' FMLA rights and her termination. There is no dispositive factor in establishing causal connection. *Nguyen*, 229 F.3d 559. Temporal proximity may give an inference of retaliation, *Grubb,* 401 F.App'x at 112, but is insufficient to establish causal connection. *Cutcher v. Kmart Corp.*, 364 F.App'x 183, 190 (6th Cir. 2010). However, "temporal proximity between the protected activity and the adverse employment action, 'coupled with other indicia of retaliatory conduct,' may give rise to a finding of causal connection." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (*quoting Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006)).

Marks returned from her final FMLA leave on April 7, 2009, and was terminated on May 7, 2009, demonstrating temporal proximity. *Singfield v. Akron Metro. Hous. Auth.,* 389 F.3d 555, 563 (6th Cir. 2004). However, Marks does not present enough evidence of retaliatory conduct for a jury to find a causal connection. While she states that Peggy Darrow, her coach manager around 2005, told Marks that she was put on Darrow's team because "management" intended to fire her for FMLA use, (Marks Dep. at 315-316), her actual termination did not occur until four years later. Marks also states that notes in her coaches' log refer to her illness. However, mere reference to her illness is not indicative of retaliatory conduct. As Marks is unable to meet her initial burden, it is not necessary to conduct the remainder of the burden shifting analysis.

Even if Marks were able to meet her initial burden, she cannot demonstrate that Ohio Bell's proffered reason for terminating her - violation of the Code of Business Conduct by misrepresenting the time she spent away from the office on April 22, 2009 - is pretextual. To

-14-

establish pretext, she must offer evidence to show that Ohio Bell's reason either: (1) does not have basis in fact; (2) did not actually motivate the discharge; or (3) was insufficient to motivate the discharge. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds, *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)). Marks cannot show that the proffered reason does not have basis in fact because she cannot demonstrate that Ohio Bell did not actually believe its proffered reason for terminating her. *See McConnell v. Swifty Transp., Inc.*, 198 F.App'x 438, 442 (6th Cir.) (citation omitted). Though Marks attempts to discredit MacDonald because of his own violations of company policy, she presents no evidence that he had a discriminatory animus toward Marks or lied about Marks' conduct. Moreover, Marks cannot demonstrate that Willis unreasonably relied on Williams' report, in which Marks stated that her court hearing ended at 3:30 p.m., which strongly contradicted the information Williams received from the court and Marks' own lawyer. Furthermore, Marks cannot show that Ohio Bell's reason for termination did not actually motivate the discharge because the company had previously allowed her to take FMLA leave every year since 2002 without repercussion and the weight of the evidence shows that she was terminated for the misrepresentations she made. *See Kitts v. General Tel. North Inc.*, No. 2:04cv173, 2005 WL 2277438, at *15 (S.D. Ohio Sept. 19, 2005). Finally, Marks cannot show that the proffered reason was insufficient to motivate the discharge because she has not demonstrated that other employees engaged in the same activity without similar adverse action taken against them. *See Russell v. Univ. of Toledo*, 537 F.3d 596, 607 (6th Cir. 2008).

### D. Count III: Disability Discrimination

Disability discrimination claims under Ohio law are analyzed in the same manner as disability discrimination claims under federal law. *Clabber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir. 2007); *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004). To establish a prima facie case of disability discrimination under Ohio Revised Code 4112.02(A), Marks must demonstrate that: (1) she is disabled; (2) Defendant took an adverse employment action against her at least partially based upon the disability; and (3) she can safely and substantially perform the essential functions of her job. *Hood v. Diamond Prod., Inc.*, 658 N.E. 2d 738, 741 (Ohio 1996) (citation omitted); *Niles v. Nat'l Vendor Servs*, No. 10AP-128, 2010 WL 3783426, at *5 (Ohio App. Ct. Sept. 28, 2010). Upon Marks' showing of a prima facie case of disability discrimination, the burden shifts to Ohio Bell to set forth a legitimate, nondiscriminatory reason for the action taken. *See Hood*, 658 N.E.2d at 741. If Defendant presents a nondiscriminatory reason for the adverse employment action, the burden shifts back to Marks to demonstrate that the stated reason was a pretext for impermissible discrimination. *Id*. at 742.

Marks has sufficient evidence to prove a prima facie case for discrimination. It is not disputed that Marks was disabled by her chronic psychological condition or that she could perform the essential functions of her job. Moreover, Marks is able to produce circumstantial evidence that she was terminated, in part, based on her disability. Miceli's April 10 email expressed concern that, before Marks could be terminated for the 74 hours of absence, she would take disability leave. Shortly after, Defendant commenced its investigation of Marks for her absence on April 22, which ultimately resulted in Marks' termination. Based on Miceli's email

-16-

and Marks' termination shortly thereafter, a jury could infer that Defendant had decided to terminate Marks, in part, to prevent her from taking disability leave.

The burden shifts to Ohio Bell to present a legitimate, nondiscriminatory reason for terminating Marks.  As discussed, *supra*, Ohio Bell easily meets its burden.  Ohio Bell's explanation for firing Marks is that she violated the company's Code of Business Conduct, pursuant to which misrepresentation is a terminable offense.[4]  Specifically, Marks misrepresented how long the April 22 court hearing lasted, first by stating that it ended at 3:30 p.m. and then by changing her story at her Review Board Hearing.  A jury could conclude that Ohio Bell had a reasonable belief that Marks was being dishonest and that she could be terminated in accordance with company policy.  *See also Baughter v. Dekko Heating Techs.,* No. 03-2784, 2004 WL 232084 (7th Cir. Jan. 29, 2004) (holding that if employer actually believed that employee had been dishonest, "it is impossible to deem the action a pretext for discrimination or an episode of retaliation.").

Consequently, Marks must demonstrate that the company's purported reason for terminating her was a pretext for impermissible discrimination.  Summary judgment is granted in favor of Defendant on this count because Marks cannot meet this burden.  As discussed, *supra*, she cannot prove that Ohio Bell's stated reason: (1) did not have basis in fact; (2) did not actually motivate the discharge; or (3) was insufficient to motivate the discharge.  *Manzer*, 29 F.3d at 1084.  While Ohio Bell may not have approved of Marks' utilization of disability (and

---

[4]The Ohio Bell Code of Business Conduct states, in relevant part, "fraudulent or illegal conduct committed on or off the job may be grounds for disciplinary action, up to and including dismissal," and "fraudulent or illegal conduct includes, but is not limited to, any oral or written misrepresentation of facts,...including improper reporting of time or expenses, or any other dishonest acts." (Willis Decl. Ex. 1)

FMLA) leave and may have been looking for a reason to terminate her, Marks has failed to show that her termination was due to anything other than her misrepresentations. Most importantly, she has not shown that she was treated differently than any other employee who was found to have violated the Code of Business Conduct. Marks was well aware that Ohio Bell was closely scrutinizing her use of leave, yet she made material misrepresentations about the timing of the April 22 court hearing and her whereabouts throughout the day. In short, Marks gave Ohio Bell a legitimate reason to terminate her.

### E. Count IV: Failure to Accommodate a Disability

Failure to accommodate a disability is a form of disability discrimination under the ADA and Ohio law. A claim for failure to accommodate a disability requires the plaintiff to prove: (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know of her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Myers v. Cuyahoga Cnty., Ohio*, 182 F.App'x 510, (6th Cir. 2006).

Marks' amended complaint alleges that "Ms. Marks requested that Ohio Bell provide a reasonable accommodation for her disability, including disability leave" and that Ohio Bell failed to do so. (Compl. at ¶42-43.) Marks' opposition brief focuses on the April 10, 2009 email from Miceli to Willis indicating that she wished to see Marks' case "escalated" and Miceli's subsequent email expressing concern that Marks would take disability to avoid termination. Marks then argues that Ohio Bell proactively terminated her before she could request increased FMLA leave due to her PTSD. (Doc #: 27 at 22).

Summary judgment is granted in favor of Defendant on this count because Marks failed to request an accommodation.  Marks had been approved for intermittent FMLA leave, which she had been taking for several years.  However, the record does not indicate that Marks requested further accommodation beyond the intermittent FMLA leave she had already been utilizing.  While Marks claims she was terminated because Ohio Bell knew she was going to request a disability accommodation – a leave of absence – she never actually made any request.  Because she did not request an accommodation, Ohio Bell necessarily could not have denied her request.  Accordingly, Marks cannot demonstrate that Defendant failed to accommodate her disability.

### III.  CONCLUSION

For the reasons discussed, supra, Defendant's Motion for Summary Judgment (**Doc #: 22**) is hereby **GRANTED** on all counts and judgment is entered in favor of Defendant.

**IT IS SO ORDERED.**

 */s/ Dan A. Polster     August 2, 2011*  
**Dan Aaron Polster**  
**United States District Judge**